IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DARRELL VARNER,**

    Plaintiff,

v.                                               Civil Action No. **3:24CV566 (RCY)**

**WARDEN LEU,** *et al.***,**

    Defendants.

**MEMORANDUM OPINION**

Darrell Varner, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to *Bivens*.[1] The action proceeds upon the Particularized Complaint. (ECF No. 19). This matter is before the Court on Defendants'[2] Motion to Dismiss (ECF No. 43) and the Court's screening obligations pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. The Court provided Varner with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (ECF No. 45), and Varner filed a response to Defendants' Motion to Dismiss (ECF No. 46).[3] For the reasons set forth below, the Motion to Dismiss will be GRANTED. The action will be DISMISSED for want of jurisdiction and as legally frivolous, as Varner's claims are not cognizable under *Bivens*.

**I.   STANDARD OF REVIEW**

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The United States Attorney filed the Motion to Dismiss on behalf of Warden Leu, Captain Rosencrance, Officer Williams, Officer Gregory, and Officer Graves (Jane Doe 1). (*See* ECF No. 43, at 1.) John Doe 1 and John Doe 2 have not been served. Nevertheless, because the Court lacks jurisdiction to entertain Varner's claims and the action is legally frivolous, the Court also dismisses any claim against the Defendants who have not been served.

[3] In his Response, Varner indicates that his "claims were reviewed and accepted by the court which is why I was able to proceed," and asks the Court "to please dismiss defendants' motion and continue on with the case." (ECF No. 46, at 1.) The Court's decision to serve the action did not mean that the case would survive against a motion to dismiss.

on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Under the first standard, "a patently insubstantial complaint may be dismissed, for example, for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Neitzke*, 490 U.S. at 327 n.6 (citations omitted). The burden then rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Under Rule 12(b)(1) review, a complaint may be deemed deficient on its face if it fails to state a claim upon which subject matter jurisdiction can lie. *Id.* (citing *Adams*, 697 F.2d at 1219).

The second standard for "failure to state a claim" is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ALLEGATIONS AND CLAIMS

Varner alleges that between November 15, 2023, and November 30, 2023, FCI Petersburg was on lockdown status. (ECF No. 19 ¶¶ 1–2.) During this time, Varner claims he was "prohibited from taking a shower and having his clothes and linens washed," and "neither hygiene items nor cleaning supplies were distributed." (*Id.* ¶ 2.) Varner could not sweep his cell, his sink and toilet were dirty, and he had to eat without access to soap. (*Id.* ¶ 17.) On November 28, 2023, all inmates in his unit were required to "strip down to boxer briefs, a t-shirt, and shower sandals so they could be searched." (*Id.* ¶ 7.) However, the transgender inmates were permitted to wear shorts and sweatpants "while [Varner] and all non-transgender inmates had to strip down to underwear." (*Id.* ¶ 9.) Varner then had to walk across the compound when it was under 40 degrees "in his underwear, a t-shirt, and shower sandals." (*Id.* ¶ 12.) After being interviewed, Varner "was placed in a holding cell . . . with multiple inmates, male and transgender alike." (*Id.* ¶ 16.)

Based on these allegations, Varner makes the following claims remaining before the Court:[4]

| | |
|---|---|
| Claim A: | Defendants Leu, Rosencrance, Williams, and Gregory violated Varner's Eighth Amendment rights by "[d]enial of healthcare," for not providing him access to showers, clean clothes and linens and hygiene and cleaning supplies during the two-week lockdown. (*Id.* at 4–5.) |
| Claim B: | Defendants Leu, Rosencrance, John Doe 1, John Doe 2, Officer Graves (Jane Doe 1) violated Varner's Eighth Amendment rights by "forc[ing] inmates to walk across the compound in inadequate clothing." (*Id.* at 5–7.) |
| Claim D: | Defendants Leu, Rosencrance, and John Doe 1 violated Varner's Fifth Amendment rights by discriminating against non-transgender inmates by requiring them to "strip down to underwear" when |

---

[4] By Memorandum Order entered on March 18, 2025, the Court dismissed Varner's third claim labeled, "C. Humiliation," (*see* ECF No. 19, at 7–9), because he failed to identify how Defendants deprived him of a constitutional or federal right on this basis. (ECF No. 21 ¶ 1.) Jane Doe 2 and John Doe 3, who were only named in the third claim, were dismissed from the action.

4

> transgender inmates were permitted to "wear shorts and sweatpants." (*Id.* at 9–10.)

Varner seeks monetary damages. (ECF No. 10.)

### III.   ANALYSIS

**A.   The *Bivens* Remedy**

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Specifically, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020). The Supreme Court explained that although "the Fourth Amendment does not provide for money damages 'in so many words,'" the court could nevertheless "authorize a remedy under general principles of federal jurisdiction." *Ziglar v. Abbassi*, 582 U.S. 120, 131 (2017) (quoting *Bivens*, 403 U.S. at 392, 396)). In the following decade, the Supreme Court recognized only two additional contexts, or implied causes of action, in which an individual could pursue a claim for monetary damages against federal officials for constitutional violations. *Id.* The Supreme Court has explained:

> In *Davis v. Passman*, 442 U.S. 228, (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.* at 248–249. And in *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. *See id.*, at 19. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

*Id.* (parallel citations omitted). As recently explained by the United States Court of Appeals for the Fourth Circuit:

> Though it initially described *Bivens* broadly as establishing that "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right," *Carlson*, 446 U.S. at 18, in the 43 years since *Carlson*, the Court has "consistently rebuffed" requests to expand implied *Bivens* actions. *Hernandez v. Mesa*, 140 S. Ct. at 735, 743 (2020); *see also Egbert v. Boule*, 142, S. Ct. 1793, 1799 (2022). In the last five years alone, the Court has scaled back *Bivens* significantly, delivering a trilogy of opinions expressing opposition toward any expansion of *Bivens* actions. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (noting that "expanding the *Bivens* remedy is now considered a disfavored judicial activity" (internal quotation marks omitted)); *Hernandez*, 140 S. Ct. at 742–43 (noting that if "the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that we would have reached the same result" (alterations in original) (internal quotation marks omitted)); *Egbert*, 142 S. Ct. at 1802 ("Now long past the heady days in which this Court assumed common-law powers to create causes of action [as in *Bivens*], we have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." (internal quotation marks and citations omitted)).

*Bulger v. Hurwitz*, 62 F.4th 127, 136 (4th Cir. 2023) (alterations and omission in original) (parallel citations omitted). Thus, "the Supreme Court all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022) (citing *Egbert*, 596 U.S. at 504 (Gorsich, J. concurring)). However, instead of overruling *Bivens*, the Supreme Court has elected "to severely limit" its reach "by imposing a highly restrictive two-step analysis" that district court's must follow. *Bulger*, 62 F.4th at 136–37 (citing *Hernandez*, 589 U.S. at 102).

First, "a court must determine whether a claim falls within the causes of action authorized under the Supreme Court's three *Bivens* cases -- *Bivens*, *Davis*, and *Carlson* -- or whether it 'arises in a new context' or involves a 'new category of defendants.'" *Id.* (some quotation marks omitted) (quoting *Hernandez*, 589 U.S. at 102).[5] "If the case is different in a meaningful way from previous

---

[5] "If the context is not new . . . then a *Bivens* remedy continues to be available." *Tun-Cons v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019).

*Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139. If the context is "new," then the court must "'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension' of *Bivens*." *Bulger*, 62 F.4th at 137 (some quotation marks omitted) (quoting *Hernandez*, 589 U.S. at 102). "This 'special factors' inquiry must focus on 'separation of power principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." *Id.* (quoting *Hernandez*, 589 U.S. at 102). "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?' If there is a rational reason to think that the answer is 'Congress'—as will be in most every case—no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (internal quotations omitted).[6]

### B.     Varner's Claims Present a New Context

The Court first considers whether this case involves a "new context" for *Bivens* purposes. In Claim A, Varner argues that Defendants Leu, Rosencrance, Williams, and Gregory violated his rights by denying him showers, laundry, hygiene and cleaning supplies during a two-week lockdown. In Claim B, Varner alleges that Defendants Leu, Rosencrance, John Doe 1, John Doe 2, Officer Graves (Jane Doe 1) required him to walk across the compound in cold weather in his shirt, underwear, and shower sandals. In Claim D, Varner contends that Defendants Leu, Rosencrance, and John Doe 1 violated Varner's Fifth Amendment rights by discriminating against non-transgender inmates by requiring them to "strip down to underwear" when transgender

---

[6] In *Egbert*, the Supreme Court noted that: "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. However, the Supreme Court and the Fourth Circuit have continued to utilize the two-step inquiry even after *Egbert*. *See, e.g.*, *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (explaining that "the Court has applied a two-step test" and applying that test to find no *Bivens* remedy for an Eighth Amendment excessive force claim); *Bulger*, 62 F.4th at 137–41 (applying two-part inquiry to find no *Bivens* remedy for failure to protect claim); *Tate v. Harmon*, 54 F.4th 839, 844–48 (4th Cir. 2022) (applying two-part inquiry to find no *Bivens* remedy for conditions of confinement claim).

inmates were permitted to "wear shorts and sweatpants." (ECF No. 19, at 9–10.) Varner's claims do not fall within the implied causes of actions authorized under *Bivens*, *Davis*, or *Carlson*.

"The Supreme Court has instructed not only that 'new context' must be understood broadly, but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846 (citing *Egbert*, 596 U.S. at 496). Thus, the Supreme Court "has made clear that, for a case to be 'different in a meaningful way from [the three] previous *Bivens* cases,' a radical difference is not required." *Tu-Cos*, 922 F.3d at 523 (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). The Court has provided non-exhaustive examples and explained that:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory of other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. And, more recently in *Egbert,* the Supreme Court added that "'uncertainty alone' as to whether allowing a *Bivens* claim would have systematic consequences," is sufficient to foreclose relief. *Tate*, 54 F.4th at 846 (quoting *Egbert*, 596 U.S. at 493).

The Fourth Circuit has recognized that "[t]he Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*," and thus, has "repeatedly heeded that warning." *Bulger*, 62 F.4th at 137 (citations omitted). In recent years, the Fourth Circuit has determined that a claim that Bureau of Prisons officials failed to stop a transfer to a lower grade medical facility and failed to protect an inmate from inmate-on-inmate violence, resulting in his death, was a new context. *See id.* Similarly, the Fourth Circuit has concluded that an inmate's "'degenerate' conditions of confinement" claim was

sufficiently different "from any Supreme Court decision finding a *Bivens* cause of action." *Tate*, 54 F.4th at 842.[7]  However, the Fourth Circuit was recently reversed by the Supreme Court for extending the *Bivens* remedy to an Eighth Amendment excessive force claim.  *See Goldey*, 606 U.S. at 942–45.  In explaining why *Bivens* failed to extend to such a claim, the Supreme Court once again noted that it had "repeatedly emphasized that 'recognizing a cause of action under *Bivens* is 'a disfavored judicial activity'" *id.* at 944 (citation omitted), and that, "[f]or the past 45 years, this Court has consistently declined to extend *Bivens* to new contexts," *id.* at 945.  Applying these principles, the Court easily concludes that Varner's claims present new *Bivens* contexts.

   1.   **Claims A and B (Eighth Amendment Claims)**

First, with respect to Varner's Eighth Amendment claims of unconstitutional conditions of confinement, the Court concludes that this claim presents a new *Bivens* context.  Although *Carlson* also involved an Eighth Amendment claim, the context is sufficiently different.  As the Fourth Circuit has explained,

> [t]o be sure, the claim authorized in *Carlson* was an Eighth Amendment claim. However, the Supreme Court has made clear that courts should not interpret Carlson to apply outside the precise context at issue in that case, noting that even claims challenging the adequacy of medical care may involve the same 'right and . . . mechanism of injury' as in Carlson but still present 'different' contexts.  As noted, *Carlson* "involved a prison official's deliberate indifference to an inmate's health by failing to provide competent medical care after the inmate suffered a severe asthma attack leading to the inmate's death."

---

[7] In *Tate*, the Fourth Circuit also dispelled any notion that *Farmer v. Brennan*, 511 U.S. 825 (1994) provided a fourth context for *Bivens* in the Eighth Amendment prisoner arena.  54 F.4th at 847.  The Fourth Circuit explained:

> In *Farmer*, the Eighth Amendment claim involved the failure of prison officials to protect an inmate from an attack that involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack."  511 U.S. at 831.  Importantly, however while the Court allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim.  Moreover, the Court has never considered *Farmer* a *Bivens* case when cataloging *all* of its *Bivens* cases.  *See Egbert*, 142 S. Ct. at 1799–1800, 1802; *Hernandez*, 140 S. Ct. at 741; *Ziglar*, 137 S Ct. at 1844–55, 1857.

*Id.* (parallel citations omitted).

9

*Bulger*, 62 F.4th at 138 (citations omitted).  Here, in contrast, Varner's claim is premised not on a failure to provide competent medical care, but instead on the premise that Defendants unlawfully failed to provide him with showers, laundry, and sanitary items during a lockdown, and made him walk in his t-shirt, underwear, and shower shoes outside in the cold.[8]  Varner's claim implicates unlawful conditions of confinement, and the Fourth Circuit has declined to extend a *Bivens* remedy to similar complaints.  *See Tate*, 54 F.4th at 842, 846–47 (finding "materially distinct" from *Carlson* a claim alleging deliberate indifference from placement in a cell that was "filthy and covered with mold," was extremely cold, had soiled bedding, inadequate hygiene items and cleaning supplies).  Under the "highly restrictive" standard this Court is required to apply, *see Bulger*, 62 F.4th at 137, it is clear that Varner's claim is materially different from the claim alleging the failure to provide adequate medical care recognized in *Carlson*.  *Cf. Bulger*, 62 F.4th at 138 (determining that conditions of confinement and failure to protect claims were new context); *Tate*, 54 F.4th at 846–47.

    2.    **Claim D (Fifth Amendment Claim)**

Varner's claim that he was subject to unlawful gender discrimination in violation of the Fifth Amendment also presents a new *Bivens* context, although this is a closer call.  Varner contends that Defendants Leu, Rosencrance, and John Doe 1 violated Varner's Fifth Amendment rights by discriminating against non-transgender inmates by requiring them to "strip down to underwear," while transgender inmates were permitted to "wear shorts and sweatpants."  (ECF No. 19, at 9–10.)

---

[8] Although Varner categorizes his claim as a "[d]enial of healthcare," (ECF No. 19, at 4) Varner actually brings a claim that he was denied constitutional conditions of confinement during the lockdown.

10

The Supreme Court recognized a Fifth Amendment-based *Bivens* claim in *Davis*, which "concerned alleged sex discrimination on Capitol Hill." *Hernandez*, 589 U.S. at 103; *see Davis*, 442 U.S. at 230. Although *Davis* alleged sex discrimination, that is where the similarities end. Here, Varner's claims "are brought against a 'new category of defendants—prison officials, as opposed to a former Congressman in *Davis*—operating in a different legal and factual context (prisoner litigation)." *Mays v. Smith*, 70 F.4th 198, 200 (4th Cir. 2023) (quoting *Tate*, 54 F.4th at 846). The Fourth Circuit has explained that "[e]xpanding *Bivens* to these type of claims would likely have 'systemic consequences' for the BOP in the form of increased litigation, and Congress has so far declined to create a damages remedy for these type of actions against federal prison officials." *Id.* (citing *Tate*, 54 F.4th at 846). Moreover, simply because both Varner's claim and the claim in *Davis* "arise under the Fifth Amendment," and gender discrimination, this is "insufficiently granular for the new-context inquiry," "because even where a case involves 'similar allegations' or 'almost parallel circumstances,' such 'superficial' similarities 'are not enough to support judicial creation of a cause of action.'" *Id.* (citations omitted). The Supreme Court has explained that "even a modest extension [of *Bivens*] is still an extension." *Ziglar*, 582 U.S. at 147; *see Mays*, 70 F.4th at 204 ("For example, *Bivens* permitted a damages claims under the Fourth Amendment against a federal narcotics officer for excessive force while *Egbert* rejected a virtually identical claim against a Border Patrol Agent.")

Here, while Varner's claim and the claim in *Davis* both allege gender discrimination, that is where the similarities end, and thus, the "contexts" are different. Varner contends that prison officials discriminated against him as a straight male by requiring him to wear less clothing than transgender inmates. In contrast, *Davis* involved a female congressional staff member who alleged that a Congressman discriminated against her based on her sex by terminating her from her

11

employment because he wanted to hire a man instead. *Davis*, 442 U.S. at 230–31. "[A] new contest may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846) (citation omitted).) Here, none of the facts are similar to those in *Davis*. Simply put, Varner's Fifth Amendment claim implicates a new *Bivens* context.

C.     **Special Factors**

The second step of the analysis requires the Court to determine whether there are any "special factors counselling hesitation in the absence of affirmative action by Congress" in recognizing an implied cause of action under *Bivens*. *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must center on 'separation-of-powers principles.'" *Tate*, 54 F.4th at 844 (citing *Hernandez*, 589 U.S. at 102). The special factors that courts should consider "overlap [with] the factors courts are to consider when determining whether a purported *Bivens* claim arise out of a new context." *Bulger*, 62 F.4th at 140 (citing *Egbert*, 62 F.4th at 492). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (citing *Hernandez*, 589 U.S. at 102). Once again, the Supreme Court has not provided a comprehensive list of special factors, however, the lower "courts are instructed to consider 'whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Dyer*, 56 F.4th at 278–79 (quoting *Ziglar*, 582 U.S. at 136). Courts must also look at whether "there is an alternative remedial structure present in a certain case." *Id.* (citations omitted). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). Moreover, the Fourth Circuit has repeatedly "held

12

that . . . special factors . . . counsel against extending *Bivens* in the prison context." *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 F.4th at 139–42; *Tate*, 54 F.4th at 847–48).

### 1. Varner Has Alternative Remedies

Here, alternative remedies exist for Varner to pursue his underlying claims. Defendants contend that Varner may file grievances through the Bureau of Prisons's Administrative Remedy Program (ARP"). (ECF No. 44, at 9, 11.) Specifically, the ARP allows "all inmates in institutions operated by the Bureau of Prisons," 28 C.F.R. § 542.10(b), "to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a). Although the ARP does not provide the opportunity for monetary damages, it "nevertheless offer[s] the possibility of meaningful relief and therefore remain[s] relevant to [the court's] analysis." *Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021) (citations omitted). The Supreme Court has determined that "*Bivens* relief was unavailable because federal prisoners could, among other options," use the ARP to pursue a claim. *Egbert*, 596 U.S. at 497 (citing *Malesko*, 534 U.S. at 74); *see Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim," and determining that it "need not inquire any further to decide this appeal" (citing *Egbert*, 596 U.S. at 497)). *But see Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 274 (4th Cir. 2024) (concluding "because [inmate] has alleged that officers intentionally subverted the operation of the ARP, its technical existence does not bar [inmate's] *Bivens* claim").

### 2. Other Special Factors Counsel Against an Extension

While the existence of the ARP is likely reason enough to foreclose Varner's claim, other special factors counsel against recognizing a cause of action under *Bivens*. "[L]egislative action

suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."

*Ziglar*, 582 U.S. at 148. The Supreme Court recognized that,

> "[s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. The Court has said in dicta that the Act's exhaustion provisions would not apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 148–49 (internal citations omitted). As the Fourth Circuit explained recently, "Congress's decision not to include an individual-capacity damages remedy in the Prison Litigation Reform Act 'speaks volumes and counsels strongly against judicial usurpation of the legislative function.'" *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 F.4th at 140–41). Accordingly, the lack of legislative action counsels against extending a *Bivens* remedy to the claims alleged here. *See id.*; *cf. Springer v. United States*, No. 21–11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (determining that Congress "has legislated (post-*Carlson*) regarding prisoner's rights" and chose not "to extend *Carlson* to other 'kinds' if prisoner claims under the Eighth Amendment," and finding that a conditions of confinement claim "is an issue best left for Congress to address").

The Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102). As discussed above, several special factors counsel against expanding the remedy. Thus, the Court concludes that a *Bivens* action is not a cognizable remedy for Varner's claims. Accordingly, the Motion to Dismiss will be GRANTED. Varner's claims will be DISMISSED for want of jurisdiction and as legally frivolous.

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 43) will be GRANTED. The action will be DISMISSED for want of jurisdiction and as legally frivolous. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: December 3, 2025
Richmond, Virginia